UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------------x

COREY PEGUES

                                                                    **COMPLAINT**
                                                                    **AND JURY DEMAND**

                                        Plaintiff,

            -against-

THE COUNTY OF NASSAU; THE CITY OF NEW YORK;
NEWS CORPORATION; THOMAS C. KRUMPTER, as Acting
Police Commissioner, Nassau County Police Department;
WILLIAM J. BRATTON, as Police Commissioner;
JOSEPH J. REZNICK, as Deputy Commissioner, Internal Affairs
Bureau; each being sued individually and in their official capacities
as employees of defendants' THE COUNTY OF NASSAU
and THE CITY OF NEW YORK

                                        Defendants'

------------------------------------------------------------------------------x

        The plaintiff, COREY PEGUES by his attorney THE SANDERS FIRM, P.C., for his

complaint against defendants' THE COUNTY OF NASSAU; THE CITY OF NEW YORK;

NEWS CORPORATION; THOMAS C. KRUMPTER; WILLIAM J. BRATTON and JOSEPH

J. REZNICK respectfully set forth and allege that:

## INTRODUCTION

        This is an action for equitable relief and money damages on behalf of the plaintiff COREY

PEGUES, (hereinafter referred to as "plaintiff") who was and is being deprived of his constitutional rights

as a United States Citizen as a result of defendants' THE COUNTY OF NASSAU; THE CITY OF

NEW YORK; NEWS CORPORATION; THOMAS C. KRUMPTER; WILLIAM J. BRATTON

and JOSEPH J. REZNICK'S conduct.

## JURISDICTION AND VENUE

        1.      The jurisdiction of this Court is invoked to redress deprivation of plaintiff's

constitutional rights secured pursuant to the First Amendment of the United States Constitution; the

Civil Rights Act of 1866, 42 U.S.C. § 1981; the Civil Rights Act of 1871, 42 U.S.C. § 1983 and 1985; Defamation and Libel *Per Se;* Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional Distress.

2.      The unlawful constitutional practices, violations of plaintiff's civil rights complained of herein were perpetuated throughout the world.

**PROCEDURAL REQUIREMENTS**

3.      Plaintiff has filed suit with this Court within applicable statute of limitations.

4.      Plaintiff is not required to exhaust any administrative procedures prior to suit under the First Amendment of the United States Constitution, the Civil Rights Act of 1866 or 1871.

5.      Plaintiff alleges on December 8, 2014, filed Notices of Claims against defendants' THE COUNTY OF NASSAU; THE CITY OF NEW YORK; THOMAS C. KRUMPTER; WILLIAM J. BRATTON and JOSEPH J. REZNICK, they were not adjusted.

**PLAINTIFF**

6.      Plaintiff COREY PEGUES is a citizen of the United States of America, over twenty-one (21) years of age, resident of Nassau County and retired employee of defendant THE CITY OF NEW YORK, more specifically the Police Department City of New York.

**DEFENDANTS**

7.      Defendant THE COUNTY OF NASSAU is a municipal county organized under the laws of the State of New York.

8.      Defendant THE CITY OF NEW YORK is a municipal corporation organized under the laws of the State of New York.

9.      Defendant NEWS CORPORATION officially referred to as NEW NEWS CORP is an American multinational mass media company, formed as a spin-off of the former NEWS

2

CORPORATION. The company was incorporated on December 11, 2012, in the State of Delaware and operates as a "Foreign Business Corporation" in the State of New York registered on June 26, 2013, as the New Newscorp Inc. The New York Post is an American newspaper published daily and wholly owned by defendant NEWS CORPORATION.

10.     Defendant THOMAS C. KRUMPTER, as Acting Police Commissioner of the Nassau County Police Department.

11.     Defendant WILLIAM J. BRATTON, as Police Commissioner of the Police Department City of New York.

12.     Defendant JOSEPH J. REZNICK, as Deputy Commissioner, Internal Affairs Bureau of the Police Department City of New York.

## BACKGROUND

13.     Plaintiff is an African-American Male.

14.     Plaintiff alleges on or about May 12, 1986, he was arrested for Assault in the Third Degree a Misdemeanor as a juvenile.

15.     Plaintiff alleges on or about August 8, 1986, the aforementioned case was dismissed and sealed.

16.     Plaintiff alleges on or about October 19, 1987, he enlisted with the Department of Defense and assigned to the United States Army.

17.     Plaintiff alleges on or about April 23, 1991, he was "Honorably Discharged" after serving several years with the United States Army as a Medical Specialist.

18.     Plaintiff alleges shortly thereafter, he began the application process to become civil service qualified for eventual appointment to the position of Police Officer, Police Department City of New York.

3

19.    Plaintiff alleges during the application process, he fully disclosed information sought about his character, medical and psychological background to defendant THE CITY OF NEW YORK through the NYPD Application Processing Division.

20.    Plaintiff alleges on about January 13, 1992, after successfully completing the application process, he was deemed civil service qualified by defendant THE CITY OF NEW YORK through the NYPD Application Processing Division, which transmitted the data to defendant THE CITY OF NEW YORK'S Department of Citywide Administrative Services and appointed him to the position of Police Officer, Police Department City of New York.

21.    Plaintiff alleges on or about September 5, 2011, while performing his patrol duties with an Operator as the late tour Incident Commander and Commanding Officer of the 67th Precinct, he was injured while effecting a domestic violence arrest.

22.    Plaintiff alleges he sustained injuries to his lower back.

23.    Plaintiff alleges the injuries required surgery including extensive rehabilitation treatment.

24.    Plaintiff alleges based upon the injuries he sustained on September 5, 2011 and subsequent medical treatment, he was unable to fulfill the duties and responsibilities of a police officer.

25.    Plaintiff alleges defendant THE CITY OF NEW YORK through Former Police Commissioner Raymond W. Kelly surveyed him, filing applications for him to either receive an Accidental or Ordinary Disability Retirement Pension to be determined by the New York City Police Pension Fund.

26.    Plaintiff alleges Former Police Commissioner Raymond W. Kelly's actions were consistent with the New York City Administrative Code.

27.     Plaintiff alleges the Disability Retirement System is an interactive two-step application process consisting of a Medical Board and Pension Board managed by the New York City Police Pension Fund, a corporation of defendant THE CITY OF NEW YORK.

28.     Plaintiff alleges on or about October 9, 2012, he appeared before the Medical Board, after an examination, the Medical Board deferred a decision pending an evaluation of updated medical records.

29.     Plaintiff alleges on or about December 18, 2012, after an examination and further review of his medical records, the Medical Board recommended approval of the Police Commissioner's application for him to receive an Accidental Disability Retirement Pension. It further determined the competent causal factor is the September 5, 2011, Line of Duty Injury.

30.     Plaintiff alleges on or about March 13, 2013, the Pension Board adopted the Medical Board's findings and voted to approve the Police Commissioner's application for him to receive an Accidental Disability Retirement Pension.

31.     Plaintiff subsequently retired on or about March 31, 2013, as a Deputy Inspector.

32.     Plaintiff alleges prior to his retirement, he appeared at the NYPD Pension Section and New York City Police Pension Fund both managed by employees of defendant THE CITY OF NEW YORK.

33.     Plaintiff alleges defendant THE CITY OF NEW YORK through its employees assigned to the NYPD Employee Management Division, issued him a "Good Guy Letter."

34.     Plaintiff alleges he passed defendant THE CITY OF NEW YORK'S pre-retirement background investigation aka "Round Robin" and received the "Good Guy Letter" meaning there were "no open investigations criminal or otherwise" against him.

35.     Plaintiff alleges a "Good Guy Letter" is analogous to receiving an "Honorable

Discharge" meaning retired in "Good Standing" with the permission of Former Police

Commissioner Raymond W. Kelly.

36.     Plaintiff alleges based upon defendant THE CITY OF NEW YORK issuing him a

"Good Guy Letter" defendant THE COUNTY OF NASSAU issued him a FULL

UNRESTRICTED Concealed Carry Law Enforcement Pistol License through its Pistol License

Section.

37.     Plaintiff alleges upon retirement, he became very "politically active" using his

many years of law enforcement training and life experiences publicly lobbying for police reform,

particularly as they relate to interactions with communities of color.

38.     Plaintiff alleges most of his public lobbying efforts include press conferences,

community discussions, etc.

39.     Plaintiff alleges New York City Patrolman's Benevolent Association President

Patrick J. Lynch, New York City Captain's Endowment Association President Roy T. Richter,

their members, other members of the law enforcement community, and other stakeholders,

consisting of primarily Caucasian Males were publicly very critical of his police reform public

lobbying efforts.

40.     Plaintiff alleges prior to retirement, he began creating his memoir for eventual

publication believing his life experiences might have a positive impact upon others, particularly

African-American and Hispanic Males and other disenfranchised persons.

41.     Plaintiff alleges defendant NEWS CORPORATION through its wholly owned

New York Post, have a history of publishing "false" "misleading" headlines and related stories,

leading to public figures particularly African-Americans, Hispanics, and other disenfranchised

persons being subjected to public scorn, ridicule and damage to their personal and professional

reputation for defendant NEWS CORPORATION'S commercial and political gain.

42.    Plaintiff alleges on April 18, 2013, defendant NEWS CORPORATION through its wholly owned New York Post, falsely depicted Salaheddin Barhoum and Yassine Zaimi as 'Bag Men' implicated in the Boston Marathon bombing based upon its racial and religious stereotyping promoting Muslims are violent and are trying to destroy Christian values. These "false" and "malicious" values are cross-promoted through defendant NEWS CORPORATION, its affiliates and media partners.

43.    Plaintiff alleges according to the Alliance for Audited Media, ending September 30, 2013, New York is ranked first in the U.S. Radio and Television Markets.

44.    Plaintiff alleges defendant NEWS CORPORATION, wholly owned New York Post and its editorial staff are headquartered at 1211 Avenue of the Americas, New York, N.Y. 10036.

45.    Plaintiff alleges defendant NEWS CORPORATION prints its wholly owned New York Post in a plant located in the Bronx, N.Y.

46.    Plaintiff alleges defendant NEWS CORPORATION owns thirty-one (31) written publications including the Wall Street Journal.

47.    Plaintiff alleges defendant NEWS CORPORATION shares news stories published in its wholly owned New York Post with its affiliates and other media partners including the Fox News Channel.

48.    Plaintiff alleges according to the Alliance for Audited Media, ending September 30, 2013, the New York Post a wholly owned publication of defendant NEWS CORPORATION, was the fifth ranked U.S. Daily Newspaper in terms of circulation only behind the top four national newspapers (USA Today, the Wall Street Journal, the New York Times and the Los

Angeles Times).

49.     Plaintiff alleges according to the Alliance for Audited Media, ending September
30, 2013, the New York Post a wholly owned publication of defendant NEWS CORPORATION
had a daily circulation of 576,711 and Sunday circulation of 525,794.

50.     Plaintiff alleges according to the Alliance for Audited Media, ending September
30, 2013, the New York Post a wholly owned publication of defendant NEWS CORPORATION,
was the eighth ranked U.S. Daily Newspaper Online in terms of popularity only behind the top
seven national newspapers (The New York Times, the Wall Street Journal, USA Today, the
Washington Post, the Los Angeles Times, the Houston Chronicles, and the San Francisco
Chronicles).

51.     Plaintiff alleges on August 13, 2014, consistent with his other public lobbying
efforts he appeared on a weekly podcast, The Combat Jack Show. The show is titled: The Corey
'Life' Pegues "From the Streets to the Beat." The primary target listening audience is African-
Americans Males who embrace the Hip Hop culture.

52.     Plaintiff alleges on the show, he discussed his childhood living on the "Southside"
Jamaica, Queens, within an economically disadvantaged working class family struggling with
alcohol abuse and other related behaviors in the household.

53.     Plaintiff alleges during the discussion, he talked about "running the streets,"
becoming involved in questionable conduct along with criminal activities.

54.     Plaintiff alleges he reminds the listeners, your past life does not have to define
you or your future. In other words, you too can change.

55.     Plaintiff alleges the discussion then focused on "political" controversies involving
police-related interactions with people of color.

56.     Plaintiff alleges he focused on cases involving African-American Males such as
Abner Louima, Sean Bell, Eric Garner, and Oscar Grant.

57.     Plaintiff alleges he publicly called Eric Garner's death a murder.

58.     Plaintiff alleges on September 8, 2014, defendant NEWS CORPORATION
through its wholly owned New York Post featured him on the front page of the print and online
versions as a "Thug Cop."

59.     Plaintiff alleges inside of the print as well as the online version, defendant NEWS
CORPORATION'S wholly owned New York Post features him in an article entitled: "A retired
cop's shocking life of drugs and crime."

60.     Plaintiff alleges inside of the print version as well as the online version, defendant
NEWS CORPORATION'S wholly owned New York Post features him in an article entitled:
"Gangsta cop proud to be an infamous Post cover boy."

61.     Plaintiff alleges in the same article, defendant NEWS CORPORATION through
its wholly owned New York Post "falsely" and "maliciously" reported, "he retired last year on a
tax-free, $135,000-a-year disability pension, which law enforcement sources said he scored after
falling off a chair while serving as commanding officer of the 67th Precinct in Brooklyn."

62.     Plaintiff alleges on or about September 9, 2014, defendant THE COUNTY OF
NASSAU through defendant THOMAS C. KRUMPTER as a "political favor" to defendants'
THE CITY OF NEW YORK CITY and WILLIAM J. BRATTON, New York City Patrolman's
Benevolent Association President Patrick J. Lynch, New York City Captain's Endowment
Association President Roy T. Richter, their members, other members of the law enforcement
community, and other stakeholders, consisting of primarily Caucasian Males were publicly very
critical of his lobbying efforts, sent officers to his home and seized his firearms although he

violated no conditions of the FULL UNRESTRICTED Concealed Carry Law Enforcement Pistol License issued by defendant THE COUNTY OF NASSAU through its Pistol License Section.

63. Plaintiff alleges the officers told him "The weapons are being seized for violating the 'Good Conduct' clause of the pistol license and as a 'favor to the NYPD."

64. Plaintiff alleges on September 9, 2014 defendant THOMAS C. KRUMPTER told defendant NEWS CORPORATION through wholly owned New York Post interviewer Philip Messing "This is in my authority to do this and if [Pegues] doesn't like it, he can take me to court and sue me."

65. Plaintiff alleges defendant THOMAS C. KRUMPTER told a colleague he was honoring the NYPD's request.

66. Plaintiff alleges on September 9, 2014 defendant THE COUNTY OF NASSAU through its Pistol License Section served him with Notice of Initial Pistol License Suspension; however, the notice DOES NOT allege the basis for the suspension or provide him with a hearing date to challenge the suspension.

67. Plaintiff alleges on September 10, 2014, inside of the print and online version defendant NEWS CORPORATION through its wholly owned New York Post features him in an article titled: Gangsta cop says his past made him a better cop.

68. Plaintiff alleges on October 2, 2014, defendant NEWS CORPORATION through its wholly owned New York Post, settled the lawsuit filed by Salaheddin Barhoum and Yassine Zaimi for being "falsely" depicted as 'Bag Men' implicated in the Boston Marathon bombing.

69. Plaintiff alleges on December 6, 2014 defendant THE CITY OF NEW YORK through defendant WILLIAM J. BRATTON and JOSEPH J. REZNICK sent him an undated letter in essence "revoking" his "Good Guy" Status and demanding the return of his police

department identification card referencing the September 8, 2014 article published by defendant NEWS CORPORATION through its wholly owned New York Post.

70. Plaintiff alleges on or about December 8, 2014, filed Notices of Claims against defendants' THE COUNTY OF NASSAU; THE CITY OF NEW YORK; THOMAS C. KRUMPTER; WILLIAM J. BRATTON and JOSEPH J. REZNICK, including attached documents to support his position that the articles and statements published by defendant NEWS CORPORATION through its wholly owned New York Post, its affiliates and media partners are "false."

71. Plaintiff alleges on or about December 8, 2014, defendant NEWS CORPORATION was sent duplicate copies of the Notices of Claims filed against defendants' THE COUNTY OF NASSAU; THE CITY OF NEW YORK; THOMAS C. KRUMPTER; WILLIAM J. BRATTON and JOSEPH J. REZNICK along with the attached documents.

72. Plaintiff alleges despite defendants' THE COUNTY OF NASSAU; THE CITY OF NEW YORK; NEWS CORPORATION; THOMAS C. KRUMPTER; WILLIAM J. BRATTON and JOSEPH J. REZNICK receiving the Notices of Claims with the attachments, they never retracted their written and spoken content.

73. Plaintiff alleges defendant NEWS CORPORATION through its wholly owned New York Post "intentionally" and "maliciously" published "false and misleading" articles about him in support of its "unabashed" support for conservative political views including law enforcement where African-Americans, Hispanics and other disenfranchised persons are openly racially and politically stereotyped for its commercial and political gain among Caucasian Males and conservatives their target demographic.

74. Plaintiff alleges the aforementioned titles including all related written and spoken

11

content was created, adopted and published for commercial and political purposes by defendant NEWS CORPORATION through its wholly owned New York Post designed to "intentionally" signal and mislead the readers, listeners and viewers into "falsely" believing he was involved in criminal acts while employed as a police officer supporting racial stereotyping of African-American Males.

75. Plaintiff alleges the aforementioned titles including all related written and spoken content was created, adopted and published for commercial purposes by defendant NEWS CORPORATION through its wholly owned New York Post designed to "intentionally" signal and mislead the readers, listeners and viewers into "falsely" believing he was involved in acts of corruption while employed as a police officer supporting the racial stereotyping of African-American Males.

76. Plaintiff alleges defendant NEWS CORPORATION through its wholly owned New York Post "intentionally" misrepresented the content of his interview on The Combat Jack Show, then "maliciously" published "false and misleading" information designed to signal and mislead the readers, listeners and viewers into "falsely" believing he was involved in criminal acts while employed as a police officer supporting the racial stereotyping of African-American Males.

77. Plaintiff alleges defendant NEWS CORPORATION through its wholly owned New York Post "intentionally" misrepresented the content of his interview on The Combat Jack Show, then "maliciously" published "false and misleading" information designed to signal and mislead the readers, listeners and viewers into "falsely" believing he was involved in acts of corruption while employed as a police officer supporting the racial stereotyping of African-American Males.

78.     Plaintiff alleges defendant NEWS CORPORATION through its wholly owned New York Post "intentionally" and "maliciously" fabricated the basis for the receipt of his Accidental Disability Retirement Pension designed to signal and mislead the readers, listeners and viewers into "falsely" believing he was not entitled to accidental disability retirement pension benefits supporting the racial stereotyping of African-American Males.

79.     Plaintiff alleges defendant NEWS CORPORATION through its wholly owned New York Post "intentionally" and "maliciously" published "false and misleading" information about him designed to destroy his reputation in the law enforcement and communities of color to punish him about advocating for police policy reforms particularly as they relate to police interactions with African-American and Hispanic and other disenfranchised persons.

80.     Plaintiff alleges defendant NEWS CORPORATION through its wholly owned New York Post "intentionally" published "false and misleading" information about him in collusion with defendants' THE COUNTY OF NASSAU; THE CITY OF NEW YORK; NEWS CORPORATION; THOMAS C. KRUMPTER; WILLIAM J. BRATTON and JOSEPH J. REZNICK designed to destroy his personal and professional reputation in the law enforcement and communities of color as a "political favor" to the New York City Patrolman's Benevolent Association President Patrick J. Lynch, New York City Captain's Endowment Association President Roy T. Richter, their members, other members of the law enforcement community, and other stakeholders, consisting of primarily Caucasian Males who were publicly very critical of his police reform lobbying efforts.

81.     Plaintiff alleges defendants' THE COUNTY OF NASSAU; THE CITY OF NEW YORK; NEWS CORPORATION; THOMAS C. KRUMPTER; WILLIAM J. BRATTON and JOSEPH J. REZNICK violated his First Amendment Right to Freedom of Speech and

13

Expression by retaliating against him for discussing his life experiences, police interactions with communities of color, the Abner Louima, Sean Bell and Oscar Grants cases, in particular, calling Eric Garner's death a murder.

82.     Plaintiff alleges defendants' THE COUNTY OF NASSAU; THE CITY OF NEW YORK; NEWS CORPORATION; THOMAS C. KRUMPTER; WILLIAM J. BRATTON and JOSEPH J. REZNICK in retaliation for his speech, collectively violated his constitutional and civil rights by "intentionally" suspending his pistol license, seizing his firearms, "revoking" his police identification card, attempting to de-certify him and discontinue his Accidental Disability Retirement Pension for alleged 'fraud,' damaging his personal and professional reputation in the law enforcement community as well as communities of color leading to lost employment and business opportunities.

83.     Plaintiff alleges to this day, defendants' THE COUNTY OF NASSAU; THE CITY OF NEW YORK; NEWS CORPORATION; THOMAS C. KRUMPTER; WILLIAM J. BRATTON and JOSEPH J. REZNICK 'S actions caused him to sustain substantial damages including emotional distress, damage to his personal and professional reputation, loss of employment and business opportunities.

## VIOLATIONS AND CLAIMS ALLEGED

### COUNT I
### FREEDOM OF SPEECH
### IN VIOLATION OF
### THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION

84.     Plaintiff re-alleges Paragraphs 1 through 83 and incorporates them by reference as Paragraphs 1 through 83 of Count I of this Complaint.

85.     Plaintiff alleges defendants' THE COUNTY OF NASSAU; THE CITY OF NEW YORK; NEWS CORPORATION; THOMAS C. KRUMPTER; WILLIAM J. BRATTON and

JOSEPH J. REZNICK interfered with his right to freedom of speech and freedom of expression.

86.     Plaintiff alleges he engaged in constitutionally protected speech and expression.

87.     Plaintiff alleges he suffered retaliatory actions by defendants' THE COUNTY OF

NASSAU; THE CITY OF NEW YORK; NEWS CORPORATION; THOMAS C. KRUMPTER;

WILLIAM J. BRATTON and JOSEPH J. REZNICK.

88.     Plaintiff alleges the protected speech was a "motivating factor" in the retaliatory

actions.

89.     Plaintiff alleges defendants' THE COUNTY OF NASSAU; THE CITY OF NEW

YORK; NEWS CORPORATION; THOMAS C. KRUMPTER; WILLIAM J. BRATTON and

JOSEPH J. REZNICK'S actions caused him mental anguish, emotional distress, damage to his

personal and professional reputation, loss of employment and business opportunities.

**COUNT II**
**RACE DISCRIMINATION**
**IN VIOLATION OF**
**THE CIVIL RIGHTS ACT OF 1866, 42 U.S.C. § 1981**

90.     Plaintiff re-alleges Paragraphs 1 through 89 and incorporates them by reference as

Paragraphs 1 through 89 Count II of this Complaint.

91.     Plaintiff alleges the discriminatory acts and omissions of defendants' THE

COUNTY OF NASSAU; THE CITY OF NEW YORK; NEWS CORPORATION; THOMAS C.

KRUMPTER; WILLIAM J. BRATTON and JOSEPH J. REZNICK interfered with his right to

enforce contracts under color of state law due to his race.

92.     Plaintiff alleges the purpose of defendants' THE COUNTY OF NASSAU; THE

CITY OF NEW YORK; NEWS CORPORATION; THOMAS C. KRUMPTER; WILLIAM J.

BRATTON and JOSEPH J. REZNICK and their agents in so acting was to prevent him, through

economic and psychological intimidation, from seeking the equal protection of the laws.

93.     Plaintiff alleges defendants' THE COUNTY OF NASSAU; THE CITY OF NEW YORK; NEWS CORPORATION; THOMAS C. KRUMPTER; WILLIAM J. BRATTON and JOSEPH J. REZNICK and their agents acted to deprive him of his civil rights by repeated and insidious acts of harassment, intimidation, bad faith and threats.

94.     Plaintiff alleges as a result of the aforesaid acts, he suffered mental anguish, emotional distress, damage to his personal and professional reputation, loss of employment and business opportunities.

## COUNT III
## CONSPIRACY
## IN VIOLATION OF
## THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1985

95.     Plaintiff re-alleges Paragraphs 1 through 94 and incorporates them by reference as Paragraphs 1 through 94 of Count III of this Complaint.

96.     Plaintiff alleges defendants' THE COUNTY OF NASSAU; THE CITY OF NEW YORK; NEWS CORPORATION; THOMAS C. KRUMPTER; WILLIAM J. BRATTON and JOSEPH J. REZNICK under color of law, personally interfered with and deprived him of his constitutional rights due to race.

97.     Plaintiff alleges defendants' THE COUNTY OF NASSAU; THE CITY OF NEW YORK; NEWS CORPORATION; THOMAS C. KRUMPTER; WILLIAM J. BRATTON and JOSEPH J. REZNICK under color of law either acted in a concerted, malicious intentional pattern to further violate his constitutional rights or knowing such constitutional violations was taking place, knowingly omitted to protect him.

98.     Plaintiff alleges defendants' THE COUNTY OF NASSAU; THE CITY OF NEW YORK; NEWS CORPORATION; THOMAS C. KRUMPTER; WILLIAM J. BRATTON and JOSEPH J. REZNICK acted in collusion with one another to deprive him of his constitutional

right to his First Amendment Right to Freedom of Speech and Expression by retaliating against him for discussing his life experiences, police interactions with communities of color, the Abner Louima, Sean Bell and Oscar Grants cases, in particular, calling Eric Garner's death a murder.

99.     Plaintiff alleges defendants' THE COUNTY OF NASSAU; THE CITY OF NEW YORK; NEWS CORPORATION; THOMAS C. KRUMPTER; WILLIAM J. BRATTON and JOSEPH J. REZNICK acted in collusion with one another collectively violated his constitutional and civil rights by "intentionally" suspending his pistol license, seizing his firearms, "revoking" his police identification card, attempting to de-certify him and discontinue his Accidental Disability Retirement Pension for alleged 'fraud,' damaging his personal and professional reputation in the law enforcement community as well as communities of color leading to lost employment and business opportunities.

100.    Plaintiff alleges as a result of the aforesaid acts, he suffered mental anguish, emotional distress, damage to his personal and professional reputation, loss of employment and business opportunities.

## COUNT IV
## DEFAMATION and LIBEL PER SE

101.    Plaintiff re-alleges Paragraphs 1 through 100 and incorporates them by reference as Paragraphs 1 through 100 of Count IV of this Complaint.

102.    Plaintiff alleges defendants' THE COUNTY OF NASSAU; THE CITY OF NEW YORK; NEWS CORPORATION; THOMAS C. KRUMPTER; WILLIAM J. BRATTON and JOSEPH J. REZNICK either published, or caused to be published, defamatory statements about him.

103.    Plaintiff alleges these defamatory statements include a "false assertion" he is a 'Thug Cop or Gangsta Cop.'

104. Plaintiff alleges defendants' THE COUNTY OF NASSAU; THE CITY OF NEW YORK; NEWS CORPORATION; THOMAS C. KRUMPTER; WILLIAM J. BRATTON and JOSEPH J. REZNICK published or caused to be published defamatory statements to the public through defendant NEWS CORPORATION'S wholly owned New York Post in their print and online versions, as well as its affiliates and media partners from September 8, 2014 through September 11, 2014, and continue to be replicated throughout the world to this day.

105. Plaintiff alleges the defamatory statements are "false" and defendants' THE COUNTY OF NASSAU; THE CITY OF NEW YORK; NEWS CORPORATION; THOMAS C. KRUMPTER; WILLIAM J. BRATTON and JOSEPH J. REZNICK were aware but, "maliciously" chose to publish or caused to be published such defamatory statements anyway.

106. Plaintiff alleges defendants' THE COUNTY OF NASSAU; THE CITY OF NEW YORK; NEWS CORPORATION; THOMAS C. KRUMPTER; WILLIAM J. BRATTON and JOSEPH J. REZNICK'S defamatory statements constitute defamation and/or libel *per se* because they impugn his honesty, trustworthiness, dependability and his personal and professional reputation.

107. Plaintiff alleges defendants' THE COUNTY OF NASSAU; THE CITY OF NEW YORK; NEWS CORPORATION; THOMAS C. KRUMPTER; WILLIAM J. BRATTON and JOSEPH J. REZNICK'S actions damaged his reputation in the law enforcement community and communities of color.

108. Plaintiff alleges defendants' THE COUNTY OF NASSAU; THE CITY OF NEW YORK; NEWS CORPORATION; THOMAS C. KRUMPTER; WILLIAM J. BRATTON and JOSEPH J. REZNICK'S defamatory statements have caused him irreparable personal and professional damage to his reputation, embarrassment, humiliation, emotional distress, loss of

18

employment and business opportunities.

## COUNT V
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

109.     Plaintiff re-alleges Paragraphs 1 through 108 and incorporates them by reference as Paragraphs 1 through 108 of Count V of this Complaint.

110.     Plaintiff alleges defendants' THE COUNTY OF NASSAU; THE CITY OF NEW YORK; NEWS CORPORATION; THOMAS C. KRUMPTER; WILLIAM J. BRATTON and JOSEPH J. REZNICK engaged in extreme and outrageous conduct towards him that was intended to cause or disregarded the substantial probability of causing him severe emotional distress, as measured by the reasonable bounds of decency tolerated by decency society.

111.     Plaintiff alleges defendants' THE COUNTY OF NASSAU; THE CITY OF NEW YORK; NEWS CORPORATION; THOMAS C. KRUMPTER; WILLIAM J. BRATTON and JOSEPH J. REZNICK either published, or caused to be published, defamatory statements about him.

112.     Plaintiff alleges these defamatory statements include a "false assertion" he is a 'Thug Cop or Gangsta Cop.'

113.     Plaintiff alleges by defendants' THE COUNTY OF NASSAU; THE CITY OF NEW YORK; NEWS CORPORATION; THOMAS C. KRUMPTER; WILLIAM J. BRATTON and JOSEPH J. REZNICK'S actions, defendants' intended to and did intentionally or recklessly cause him to suffer severe emotional distress.

114.     Plaintiff alleges as a direct and proximate result of defendants' THE COUNTY OF NASSAU; THE CITY OF NEW YORK; NEWS CORPORATION; THOMAS C. KRUMPTER; WILLIAM J. BRATTON and JOSEPH J. REZNICK'S actions, he has suffered and continues to suffer severe emotional distress, irreparable damage to his personal and

professional reputation, loss of employment and business opportunities.

## COUNT VI
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

115.    Plaintiff re-alleges Paragraphs 1 through 114 and incorporates them by reference as Paragraphs 1 through 114 of Count VI of this Complaint.

116.    Plaintiff alleges defendants' THE COUNTY OF NASSAU; THE CITY OF NEW YORK; NEWS CORPORATION; THOMAS C. KRUMPTER; WILLIAM J. BRATTON and JOSEPH J. REZNICK negligently engaged in extreme and outrageous conduct towards him that caused or disregarded the substantial probability of causing him severe emotional distress, as measured by the reasonable bounds of decency tolerated by decency society.

117.    Plaintiff alleges defendants' THE COUNTY OF NASSAU; THE CITY OF NEW YORK; NEWS CORPORATION; THOMAS C. KRUMPTER; WILLIAM J. BRATTON and JOSEPH J. REZNICK either published, or caused to be published, defamatory statements about him.

118.    Plaintiff alleges these defamatory statements include a "false assertion" he is a 'Thug Cop or Gangsta Cop.'

119.    Plaintiff alleges by defendants' THE COUNTY OF NASSAU; THE CITY OF NEW YORK; NEWS CORPORATION; THOMAS C. KRUMPTER; WILLIAM J. BRATTON and JOSEPH J. REZNICK'S actions, defendants' negligently or recklessly caused him to suffer severe emotional distress.

120.    Plaintiff alleges as a direct and proximate result of defendants' THE COUNTY OF NASSAU; THE CITY OF NEW YORK; NEWS CORPORATION; THOMAS C. KRUMPTER; WILLIAM J. BRATTON and JOSEPH J. REZNICK'S actions, he has suffered and continues to suffer severe emotional distress, irreparable damage to his personal and

professional reputation, loss of employment and business opportunities.

## JURY TRIAL

121.    Plaintiff demands a trial by jury of all issues in this action that are so triable.

## PRAYER FOR RELIEF

Wherefore, plaintiff demands compensatory and punitive damages from defendants' THE

COUNTY OF NASSAU; THE CITY OF NEW YORK; NEWS CORPORATION; THOMAS C.

KRUMPTER; WILLIAM J. BRATTON and JOSEPH J. REZNICK jointly and severally, for

$200 Million Dollars, plus any and all available statutory remedies, both legal and equitable, and

interests and costs.

Dated:  April 8, 2015
New York, NY

Respectfully submitted,

By:    _____
       Eric Sanders (ES0224)

Eric Sanders, Esq.
**THE SANDERS FIRM, P.C.**
1140 Avenue of the Americas, 9th Floor
New York, NY 10036
(888) 892-8952 (Business Telephone)
(844) 205-7214 (Facsimile)

Website: http://www.thesandersfirmpc.com