UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

For Online Publication Only

--------------------------------------------------------------------X

COREY PEGUES,

               Plaintiff,

     -against-

THE COUNTY OF NASSAU; THE CITY OF NEW
YORK; NEWS CORPORATION; THOMAS C.
KRUMPTER; WILLIAM J. BRATTON; and
JOSEPH J. RESNICK,

             Defendants.

--------------------------------------------------------------------X

**MEMORANDUM & ORDER**
15–CV–1930 (JMA)(SIL)

**FILED**
**CLERK**

9/16/2016 2:40 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**AZRACK, United States District Judge:**

     Plaintiff Corey Pegues, a retired employee of the New York Police Department, alleges that he was deprived of his constitutional rights, discriminated against, and defamed after he appeared on a podcast discussing political controversies involving police interactions with communities of color and admitted that he engaged in criminal activities before becoming a police officer.  Plaintiff initiated this action against defendants the County of Nassau and Thomas C. Krumpter, Acting Police Commissioner of Nassau County Police Department (collectively, "the County Defendants"); the City of New York ("the City"), William J. Bratton, Police Commissioner of the New York Police Department ("Bratton"), and Joseph J. Reznick, Deputy Commissioner of the New York Police Department, Internal Affairs Bureau ("Reznick") (collectively, "the City Defendants"); and News Corporation ("News Corp.").  Plaintiff filed this action on April 8, 2015, alleging (1) retaliation for exercise of his First Amendment right to freedom of speech under 42 U.S.C. §1983 ("Section 1983"); (2) race discrimination in violation of the Civil Rights Act of 1866, 42 U.S.C. §1981 ("Section 1981"); (3) conspiracy in violation of the Civil Rights Act of 1871, 42

U.S.C. §1985 ("Section 1985"); (4) defamation and libel per se; and (5) intentional and negligent infliction of emotional distress.[1]  News Corp. and the City Defendants move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  News Corp. also moves to dismiss for insufficient service of process pursuant to Federal Rule of Civil Procedure 12(b)(5).  For the reasons stated below, defendants' motions to dismiss are granted as to all claims.

## I.      BACKGROUND

### A.  Pegues's Career with the NYPD and His Retirement

Plaintiff Corey Pegues joined the New York City Police Department ("NYPD") in January 1992, after successfully completing the application process to become civil service qualified. (Compl. ¶¶ 18, 20, ECF No. 1.)  Plaintiff alleges that during the application process he fully disclosed information about his character and medical and psychological background to the NYPD Processing Division. (Id. ¶ 19.)  The City deemed plaintiff civil service qualified and appointed him as a police officer. (Id. ¶¶ 18, 20.)

In September 2011, while responding to a domestic violence incident, plaintiff sustained lower back injuries, which required surgery and rehabilitation. (Id. ¶ 21.)  Following this incident, plaintiff was unable to fulfill his duties as an officer, and former Police Commissioner Raymond W. Kelly filed applications on plaintiff's behalf to provide plaintiff with a disability retirement pension. (Id. ¶¶ 24−25.)  After an examination and review of his medical records, the Medical Board recommended approval of plaintiff's application to receive an accidental disability retirement pension, based on plaintiff's September 2011 back injuries. (Id. ¶ 29.)  The Pension

---

[1]  In plaintiff's response letter to News Corp.'s pre-motion letter on June 1, 2015, plaintiff stated that he would voluntarily dismiss the claims for intentional and negligent infliction of emotional distress, conceding that the claims fail as a matter of law. (Opposition Letter from Eric Sanders at n.1, ECF No. 21.)

Board voted to approve plaintiff's retirement pension, and plaintiff retired on March 31, 2013 as a Deputy Inspector.  (Id. ¶¶ 30−31.)

After plaintiff passed a pre-retirement background investigation, the City, through its NYPD Employee Management Division, issued plaintiff a "Good Guy Letter." (Id. ¶ 34.) Issuance of a "Good Guy Letter" signifies that an officer has retired in "Good Standing," and that there are no open investigations against him. (Id ¶¶ 34−35.)  Based on plaintiff's receipt of the "Good Guy Letter" from the City, the County issued him an unrestricted "concealed carry" law enforcement pistol license. (Id. ¶ 36.)

## B.  Pegues's Activism After Retiring from the NYPD

Prior to retirement, plaintiff began writing a memoir for publication.  (Id. ¶ 37.)  Upon retirement, he became "very politically active," holding press conferences and community discussions to lobby for police reform, specifically relating to police interactions with "communities of color." (Id. ¶¶ 38, 40.)   Several primarily Caucasian members of the law enforcement community were publicly critical of his lobbying efforts. (Id. ¶ 39.)

On August 13, 2014, plaintiff appeared on an episode of the weekly podcast "The Combat Jack Show," which primarily targets African-American males as its audience. (Id. ¶ 51.)  In the episode, titled "The Corey 'Life' Pegues From the Streets to the Beat," plaintiff discussed growing up in Jamaica, Queens, and his involvement as a youth in gang activity, including dealing crack cocaine, attempted murder, and his past friendship with a criminal convicted of killing an NYPD officer.  (Id. ¶¶ 52–53; Declaration of Robert D. Balin ("Balin Decl."), Ex. A, ECF No. 42-4.)  In the podcast, plaintiff said that he focused on explaining how his past did not define his future and that people "can change." (Compl. ¶ 54.) Plaintiff also discussed police interactions with "people of color," and called the death of Eric Garner a murder. (Id. ¶¶ 55–56.)

3

**C.  The New York Post Articles**

   *i.  The First September 8, 2014 Article*

On September 8, 2014, following plaintiff's appearance on "The Combat Jack Show," the New York Post (the "Post"), which is owned by News Corp., printed an article about plaintiff and featured him on the front page of the print and online versions.  (Id. ¶¶ 58–59.)  The front page of the print version includes a photograph of plaintiff in his police uniform below the text "THUG COP" in large capital letters.  (Id. ¶ 58; Balin Decl., Ex. B, at 1, ECF No. 42-5.)  The online version of the article is entitled, "A retired cop's shocking life of drugs and crime."  (Compl. ¶ 59.)  The article recounts the criminal history plaintiff discussed on "The Combat Jack Show," stating in the first paragraph: "Before joining the NYPD, [Pegues] peddled crack, tried to murder a fellow drug dealer and was close pals with a notorious cop killer." (Balin Decl., Ex. B, at 2.)

   *ii.  The Second September 8, 2014 Article*

Later that day, the Post published a second online article about plaintiff, entitled, "Gangsta cop proud to be an infamous Post cover boy," which also appeared in print the next day. (Compl. ¶ 60.)  The article reports: "[Pegues] retired last year on a tax-free, $135,000-a-year disability pension, which law enforcement sources said he scored after falling off a chair while serving as commanding officer of the 67th Precinct in Brooklyn." (Id. ¶ 61.)

   *iii.  The September 10, 2014 Article*

On September 10, 2014, the Post published a third article in print and online, entitled, "Gangsta cop says his past made him a better officer."  (Balin Decl., Ex. D, at 1, ECF No. 42-7.) The article mentioned plaintiff's appearance on CNN the day before, in which he purportedly claimed that "being a former drug dealer made him a better police officer."  (Id.)

**D.  Events in Response to Articles**

On September 9, 2014, one day after the first two articles were published, the County, through County Commissioner Krumpter, sent officers to plaintiff's home and seized the firearms that he had possessed in accordance with the County-issued full unrestricted concealed carry law enforcement pistol license. (Compl. ¶ 62.)  The officers told him that the firearms were being seized because he violated the "Good Conduct clause" of the pistol license and as a favor to the NYPD.  (Id. ¶ 63.)  The same day, the County served plaintiff with a notice of initial pistol license suspension. (Id. ¶ 66.)

On December 6, 2014, the City, through Police Commissioner Bratton and Deputy Police Commissioner Reznick, sent plaintiff a letter "revoking" his "Good Guy" status and demanding the return of his police department identification card,[2] citing the September 8 Post article and plaintiff's admission that he engaged in illegal acts prior to becoming an NYPD officer. (Id.) Plaintiff also claims that the City attempted to "de-certify him" and discontinue his accidental disability retirement pension for "alleged 'fraud.'" (Id. ¶ 82.)

## II.    DISCUSSION

Plaintiff brings this action against the County Defendants, News Corp.,[3] and the City Defendants, alleging several federal and state claims.  News Corp. and the City now move to dismiss all claims pursuant to Rule 12(b)(6) for failure to state a claim.

**A. Legal Standards for a Motion to Dismiss under F.R.C.P. 12(b)(6)**

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of

---

[2]  Plaintiff does not state in the complaint or opposition whether he returned his police identification card.

[3]  News Corp. argues that it has not been properly served and that it is not a proper defendant.  Plaintiff's claims against News Corp. arise out of three articles published in the New York Post.  According to News Corp., NYP Holdings, News Corp.'s wholly-owned subsidiary, publishes the New York Post and is, therefore, the proper defendant.  Because the Court dismisses plaintiff's claims, the Court does not address these arguments.

the plaintiff.  See Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006); Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, plaintiff must allege sufficient facts "to state a claim for relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).  Mere labels and legal conclusions will not suffice.  Twombly, 550 U.S. at 555.  The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant acted unlawfully."  Iqbal, 556 U.S. at 678. In determining the plausibility of a complaint, the court may consider documents that are "integral" to a complaint as long as: (1) the record is clear that "no dispute exists regarding the authenticity or accuracy of the document"; and (2) it is "clear that there exist no material disputed issues of fact regarding the relevance of the document."  Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006).

In ruling on a Rule 12(b)(6) motion to dismiss, a district court generally must confine itself to the four corners of the complaint and look only to the allegations contained therein.  Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007).  The court, however, may consider documents that are attached to the complaint or incorporated in it by reference, as well as documents "upon which [the complaint] solely relies and which [are] integral to the complaint."  Id. (quoting Cortec Industries, Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991)).

**B.  Section 1981 Race Discrimination Claims Against the City Defendants and News Corp.**

Plaintiff alleges in the complaint that the County Defendants, City Defendants, and News Corp. violated Section 1981 by interfering with his right to enforce contracts and discriminating against him based on his race.  (Compl. ¶¶ 91–92.)  Plaintiff claims that he suffered mental anguish, emotional distress, damage to his personal and professional reputation, and loss of employment

and business opportunities as a result of defendants' acts of harassment, intimidation, bad faith, and threats.  (Id. ¶¶ 93–94.)  News Corp. argues that plaintiff alleges no existing or prospective contractual relationship with which News Corp. has interfered.  The City repeats News Corp.'s arguments, and further argues that plaintiff has not pleaded any intent by defendants to discriminate against him.  The Court agrees.

Section 1981 guarantees that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts."  42 U.S.C. § 1981(a).  The term "make and enforce contracts" includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(b).  "Section 1981 prohibits intentional discrimination on the ground of race with respect to, inter alia, the enjoyment of the terms of employment."  Skates v. Inc. Village of Freeport, No. 15–CV–1136, 2016 WL 1459659, at *14 (E.D.N.Y. Jan. 28, 2016) (Report and Recommendation), adopted, 2016 WL 1452391 (E.D.N.Y. Apr. 12, 2016).  To state a claim under Section 1981, a plaintiff must allege facts that: (1) plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute, i.e., making and enforcing contracts.  Mian v. Donaldson, Lufkin & Jenrette Securities Corp., 7 F.3d 1085, 1087 (2d Cir. 1993).  To survive a motion to dismiss, plaintiff "need only give plausible support to a minimal inference of discriminatory motivation."  Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 84 (2d Cir. 2015).

Plaintiff has failed to sufficiently allege his Section 1981 claims.  Plaintiff does not specify any contract with which defendants interfered.  Nor does plaintiff properly allege an employment relationship with any of the defendants.  In addition, plaintiff appears to have abandoned his

Section 1981 claims by failing to address them in his opposition briefing.  Thus, plaintiff's Section 1981 claims are dismissed.

## C.  The Section 1985 Conspiracy Claims Against News Corp. and the City Defendants

Plaintiff alleges the County Defendants, City Defendants, and News Corp. violated Section 1985 by conspiring to deprive him of his constitutional rights because of his race.  (Compl. ¶ 96.) Plaintiff claims that defendants "acted in collusion with one another" and "deprived him of his constitutional rights due to race" by retaliating against him for discussing his life experiences and police interactions with "communities of color." (Id. ¶¶ 96–98.)  Plaintiff also contends that while seizing his weapons, the County officers said they were acting as a "favor to the NYPD."  (Id. ¶ 63.)  The City argues that plaintiff does not plausibly allege that any overt act was in furtherance of a conspiracy and fails to show how the actions taken against him were motivated by racial animus.  News Corp. argues that plaintiff alleges no facts to support a meeting of the minds, and that the mere publishing of articles does not sufficiently allege a conspiracy.  The Court agrees that plaintiff failed to state a plausible claim under Section 1985.

To state a cause of action under Section 1985, a plaintiff must allege: (1) a conspiracy, (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, (3) an overt act in furtherance of the conspiracy, and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States.  Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999).  The conspiracy must also be motivated by "some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." Mian, 7 F.3d at 1088 (quoting United Bhd. of Carpenters, Local 610 v. Scott, 463 U.S. 825, 828– 29 (1983)).  Mere conclusory or vague allegations of a conspiracy to deprive a person of

constitutional rights cannot withstand a motion to dismiss.  Leon v. Murphy, 988 F.2d 303, 311 (2d Cir. 1993).

Plaintiff does not allege sufficient facts to plausibly state a Section 1985 claim.  First, plaintiff's claim that defendants "acted in collusion with one another" is the very type of conclusory statement that alone will never meet the plausibility standard.  See Malcolm v. Honeoye Falls-Lima Educ. Ass'n, 678 F. Supp. 2d 100, 107 (W.D.N.Y. 2010) (dismissing Section 1985 claim because plaintiff "offered nothing but vague and speculative allegations that the defendants acted in collusion . . . .").  With respect to News Corp., plaintiff does not allege any facts to support the conclusion that News Corp. was involved in a conspiracy or acted in collusion with the other defendants.  Plaintiff's naked allegation that News Corp. intentionally published false information as a "political favor" to the New York City Patrolman's Benevolent Associate and other entities associated with the City, without more, is insufficient to plausibly allege a conspiracy involving News Corp.

Second, the complaint does not sufficiently allege that any conspiracy between the City and the County was motivated by racial animus.  Even if the County officers' statement that they were doing a "favor" for the NYPD by seizing plaintiff's firearms was sufficient to plausibly support a conspiracy between the City and the County, the complaint nonetheless fails because it is devoid of facts suggesting the alleged conspiracy was motivated by a racial or class-based animus, rather than by plaintiff's public disclosure of his criminal past and criticism of the NYPD.  See, e.g., Morales v. City of New York, 752 F.3d 234, 238 (2d Cir. 2014) (finding that the district court properly dismissed a Section 1985 claim because there were only conclusory allegations that defendants violated plaintiff's rights based on his race); Young v. Suffolk County, 705 F. Supp. 2d 183, 208 (E.D.N.Y. 2010) (finding that the complaint failed to state a Section 1985 claim

because it did not allege any class-based, invidious discrimination); <u>Manbeck v. Micka</u>, 640 F. Supp. 2d 351, 385 (S.D.N.Y. 2009) ("There being no evidence from which a reasonable fact finder could find a racial or discriminatory animus, such conduct cannot create liability under Sections 1981 and 1985.").

Aside from the conclusory allegation that defendants "deprived him of his constitutional rights due to race," plaintiff fails to allege facts to support this claim. (<u>Compl.</u> ¶ 96.)  The fact that plaintiff is an African American man who discussed his criminal past and race relations and the police on "The Combat Jack Show," does not create a plausible inference that the City's action was motivated by plaintiff's race.  <u>See Lopez v. Bay Shore Union Free School Dist.</u>, 668 F. Supp. 2d 406, 414 (E.D.N.Y. 2009) ("Typically, facts that support an inference of racial animus relate to long-term practices of discrimination, or to comments made by individuals suggesting that they harbor racial biases."); <u>Johnson v. City of New York</u>, 669 F Supp. 2d 444, 452 (S.D.N.Y. 2009) (finding that mere hints of a tenuous link between a conspiracy and the fact that plaintiff is of a certain race is insufficient to state a Section 1985 claim) (citing <u>Gyadu v. Hartford Ins. Co.</u>, 197 F.3d 590, 591 (2d Cir. 1999)).  Therefore, the Section 1985 claims against the City and News Corp. are dismissed.

**D.  The Section 1983 First Amendment Retaliation Claims**

Plaintiff alleges that the County, the City Defendants, and News Corp. violated Section 1983 by interfering with his right to freedom of speech and freedom of expression, causing him mental anguish, emotional distress, damage to his personal and professional reputation, loss of employment and business opportunities.  (Compl. ¶¶ 85, 87, 89.)  Plaintiff alleges four retaliatory actions: (1) the suspension of his pistol license, (2) the seizure of his firearms, (3) the demand that he return his police identification card, and (4) the attempt to de-certify him and discontinue his

accidental disability retirement pension.  (Id. ¶ 82.)  Plaintiff specifically describes the roles of City Defendants Bratton and Reznick in the retaliatory actions, alleging that both of their names were on the letter revoking his Good Guy status and asking him to return his police identification card.  (Id. ¶ 69.)  Plaintiff argues that the exercise of his constitutionally protected speech was a motivating factor in the retaliatory actions taken against him by defendants.  (Id. ¶¶ 86, 88.)

> i. The Section 1983 Retaliation Claim Against News Corp.

Defendant News Corp. argues that the Section 1983 claim against it should be dismissed because plaintiff fails to allege that News Corp. has engaged in any state action.  Plaintiff alleges that News Corp. published false information about him in collusion with the other defendants, as a political favor to members of the law enforcement community.  Plaintiff argues that he has stated a plausible claim against News Corp., asserting that the Post's "false reporting" led to the retaliatory revocation of the "Good Guy Letter" and the attempts to de-certify plaintiff and revoke his pension benefits.  The Court finds that plaintiff has failed to demonstrate that News Corp., a private entity, can be held liable as a state actor under Section 1983.

Section 1983 allows a plaintiff to bring claims for constitutional violations against a person who has acted under the color of state law.  See 42 U.S.C. § 1983.  A plaintiff bringing a Section 1983 claim must establish that the challenged conduct constitutes state action.  Ciambriello v. Cnty. Of Nassau, 292 F.3d 307, 323 (2d Cir. 2002).  Private entities can be held liable under Section 1983 when (1) the private entity acts pursuant to the coercive power of the state, or is controlled by the state (the "Compulsion Test"); (2) the state significantly encourages the private entity, the private entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies (the "Joint Action Test"); or (3) the entity has been delegated to a

public function by the state (the "Public Function Test").  See Sybalski v. Independent Group Home Living Program, Inc., 546 F.3d 255, 257 (2d Cir. 2008).

Assuming News Corp. is the proper defendant, neither News Corp. nor the Post are state actors.  Plaintiff has not alleged in his complaint or opposition brief that News Corp. meets any of the three tests for a non-state entity to be held liable under Section 1983.  Plaintiff merely claims that News Corp. played a role in the causal chain of events and precipitated the retaliatory action by the City and the County.

First, plaintiff fails to meet the Compulsion Test because the complaint does not allege that the Post's publishing of the articles was pursuant to any state coercive power or otherwise controlled by the state.  See Hilow v. Rome City School Dist., No. 14-CV-288, 2015 WL 893050, at *12 (N.D.N.Y. Mar. 2, 2015) ("Publishing a newspaper is not an action undertaken pursuant to any state coercive power and not done under the power of the state").

Second, plaintiff fails to meet the Joint Action Test.  To meet the joint action test, a plaintiff must plead facts supporting the inference that the private entity acted in concert or had some plan or conspiracy with the state actor.  See Missere v. Gross, 826 F. Supp. 2d 542, 566−67 (S.D.N.Y. 2011).  Here, with respect to the Section 1983 retaliation claim, plaintiff merely contends that the alleged retaliatory actions by the County and the City Defendants against plaintiff were initiated "in response to [the Post's] 'false reporting' and representations of plaintiff."  (Opp. Br. at 10.) Plaintiff does not allege any collusion or conspiracy between News Corp. and a state actor.[4]

---

[4] With respect to his Section 1985 conspiracy claim, plaintiff alleges that News Corp. "intentionally" published "false and misleading" information in collusion with state actor defendants as a "political favor."  (Compl.¶¶ 73–82; Opp. Br. at 11.)  Even if these allegations applied with respect to his Section 1983 claim—which they appear not to based on plaintiff's opposition brief—plaintiff's wholly conclusory allegations of conspiracy and collusion would not support an inference of joint action between News Corp. and any state actor for the reasons explained above addressing plaintiff's Section 1985 claim.

Lastly, plaintiff fails to meet the Public Function Test.  The complaint does not allege that News Corp. was delegated a public function.  Moreover, the publication of a newspaper is not a traditional state function.  Rodriguez v. Winski, 973 F. Supp. 2d 411, 423 (S.D.N.Y. 2013) (finding the public function test requires defendants to "perform a function that is traditionally the exclusive prerogative of the state.").  Because plaintiff has not pointed to any conduct to support an inference of liability for News Corp. as a private entity, the Section 1983 claim against News Corp. is dismissed.

*ii. The Section 1983 Retaliation Claim Against the City Defendants*

The City Defendants argue that, even assuming plaintiff engaged in protected speech, plaintiff—as a private citizen—has failed to properly plead a chilling of speech, the existence of a non-trivial harm, or a City policy, practice, or custom that caused plaintiff's constitutional injury.[5] Plaintiff argues that he is a public employee, or in the alternative, that his speech has been chilled. The Court does not find plaintiff's arguments to be persuasive and dismisses plaintiff's Section 1983 claim against the City Defendants.

In order to establish individual liability under Section 1983, a plaintiff must show that the defendant is a person acting under the color of state law who caused the plaintiff to be deprived of a federal right, and was personally involved in the alleged constitutional violations.  See Back v. Hastings on Hudson Union Free School Dist., 365 F. 3d 107, 122 (2d Cir. 2004).  In order to establish liability for a municipal entity under Section 1983, a plaintiff must allege that the entity has a policy or custom that caused the alleged constitutional violation.  Monell v. Dep't of Social Services of City of N.Y., 436 U.S. 658 (1978).  To prevail on a motion to dismiss, "a plaintiff must

---

[5] The City also argues that plaintiff failed to commence an Article 78 proceeding, which the City contends is the proper method to challenge the seizure of his firearms and the attempted revocation of his police identification card.  The City also notes that plaintiff still possesses his identification card.  The Court does not address the merits of these arguments because the claim fails on alternative grounds.

make factual allegations that support a plausible inference that the constitutional violation took place pursuant either to a formal course of action officially promulgated by the municipality's governing authority or the act of a person with policymaking authority for the municipality." Missel v. Cnty. of Monroe, 351 F. App'x 543, 545 (2d Cir. 2009).

A public employee alleging First Amendment retaliation for exercise of free speech under Section 1983 must show that: (1) his speech addressed a matter of public concern; (2) he suffered an adverse employment action; and (3) a causal connection existed between the speech and the adverse employment action, such that the speech was a motivating factor in the action. Mandell v. Cnty. of Suffolk, 316 F.3d 368, 382 (2d Cir. 2003). Plaintiff's argument that he is a public employee because he received a "Good Guy" letter is unconvincing. Plaintiff further argues that "if plaintiff wasn't an 'employee' under what legal authority did [the City] revoke his 'Good-Guy Status?'" (Opp. Br. at 10.) Plaintiff is a retired officer and no longer employed by the City, regardless of his pension or "Good Guy" letter. Because plaintiff is no longer employed by the City or any other public entity, his Section 1983 First Amendment claims fail under the public employee theory.

A plaintiff who is not a public employee may still bring a Section 1983 First Amendment retaliation action as a private citizen. To succeed on a First Amendment retaliation claim as a private citizen, plaintiff must show that: (1) he engaged in protected speech, (2) the speech was a motivating factor in an adverse decision by the defendant, and (3) either his speech was actually chilled or that he suffered a concrete harm independent of the chilling of speech. See Puckett v. City of Glen Cove, 631 F. Supp. 2d 226, 239−40 (2d Cir. 2009).

Plaintiff does not allege facts sufficient to support a Section 1983 retaliation claim against the City Defendants as a private citizen because plaintiff fails to articulate a chilling effect on his

14

speech or, alternatively, concrete harm.  Plaintiff has not sufficiently alleged a chilling effect on his speech.  Plaintiff argues that defendants "t[ied] plaintiff up with costly civil litigation to protect his reputation and other legal interests," and that this litigation therefore chilled his speech.  (Opp. Br. at 12.)  As an initial matter, the Court notes that plaintiff initiated this litigation.  Moreover, if engaging in litigation alleging First Amendment retaliation was, by itself, sufficient to allege a chilling effect, it would eviscerate the requirement to allege a chilling effect.  The complaint does not contain any plausible allegations that plaintiff's speech was in fact chilled or that he was otherwise dissuaded from exercising his rights under the First Amendment.

In the absence of a chilling effect, a plaintiff alleging First Amendment retaliation can show that he suffered a concrete harm independent of the chilling of speech.  See Puckett, 631 F. Supp. 2d at 239−40.  Courts have found a satisfactory concrete harm in lieu of chilled speech when, for example, a building permit was revoked or zoning laws were misapplied in retaliation for speech.  See, e.g., Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 91 (2d Cir. 2002); Gagliardi v. Village of Pawling, 18 F.3d 188, 194-95 (2d Cir. 1994).  On the other hand, "[r]etaliatory insults or accusations may wound one's soul, but by themselves they fail to cross the threshold of measurable harm required" to suffice as a concrete harm in lieu of a chilling effect on free speech.  Zherka v. Amicone, 634 F.3d 642, 646 (2d Cir. 2011).

Plaintiff's complaint fails to specifically allege a concrete harm in lieu of chilled speech.  Moreover, plaintiff's opposition brief is entirely devoid of any arguments or legal citations addressing concrete harm.  Although plaintiff's opposition brief does not specifically refer to concrete harms, plaintiff's opposition alludes to three potential harms: (1) the City's attempt to discontinue his Accidental Disability Retirement Pension; (2) the City "revoking" his police identification card; and (3) the City Defendants' involvement in the County's revocation of his

pistol permit and seizing his firearms.  (Opp. Br. at 12.)  Plaintiff contends that these actions "damag[ed] his personal and professional reputation in the law enforcement community as well as communities of color leading to lost employment and business opportunities."  (Id.)

Plaintiff's allegation that the City is attempting to discontinue his pension plan is not a concrete harm sufficient to support a Section 1983 claim.  Moreover, neither revocation of his "Good Guy" status nor the demand that plaintiff return an identification card constitutes a concrete harm, absent a specifically pleaded, tangible injury that arose out of these actions.  Additionally, in light of the fact that plaintiff fails to address concrete harm and instead argues that he suffered an actual chilling effect on his speech, the Court declines to speculate whether plaintiff's generalized  allegations that these actions damaged his personal and professional reputation demonstrate a concrete harm.  For the reasons stated above, the Section 1983 claim against the City Defendants is dismissed for failure to state a plausible claim to relief.

## E.  Defamation and Libel Claims

Plaintiff alleges defendants either published, or caused to be published, defamatory statements about him in the Post, causing damage to his reputation in the law enforcement community and "communities of color." (Compl. ¶¶ 102, 105, 107.)  Plaintiff claims that the following statements are defamatory per se because they imply that he was involved in crime while he was a police officer and "impugn his honesty, trustworthiness, dependability and his personal and professional reputation."  (Id. ¶¶ 74, 106.)

1. "THUG COP"—front page headline of September 8 print version article (Id. ¶ 58.)

2. "A retired cop's shocking life of drugs and crime"—title of September 8 online article (Id.)

3. "Gangsta cop proud to be an infamous Post cover boy"—title of second September 8 online article (also appears in print on September 9) (Id. ¶ 60.)

4. "[Pegues] retired last year on a tax-free, $135,000-a-year disability pension, which law enforcement sources said he scored after falling off a chair while serving as commanding officer of the 67th Precinct in Brooklyn."—text of second September 8 article (Id. ¶ 61.)

5. "Gangsta cop says his past made him a better officer"—title of September 10 article (Balin Decl., Ex. D, at 1).

The City Defendants argue that plaintiff has not alleged that they made or published any defamatory statements. News Corp. contends that the words "thug" and "gangsta" are non-actionable opinions, that the articles do not imply that plaintiff was involved in crime while a police officer, and that falsely claiming that someone fell off of a chair is not defamatory. The Court agrees with defendants.

Under New York law, "[d]efamation is the injury to one's reputation either by written expression, which is libel, or by oral expression, which is slander." Idema v. Wagner, 120 F. Supp. 2d 361, 365 (S.D.N.Y. 2000). A defamatory statement is one that "exposes an individual 'to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, or . . . induce[s] an evil opinion of one in the minds of right-thinking persons, and . . . deprives one of . . . confidence and friendly intercourse in society.'" Celle v. Fillipino Reporter Enters. Inc., 209 F.3d 163, 177 (2d Cir. 2000) (quoting Kimmerle v. N.Y. Evening Journal, Inc., 186 N.E. 217, 217 (1933)).

To establish a prima facie case for defamation based on libel under New York law, a plaintiff must allege facts sufficient to show: (1) a false and defamatory statement of and concerning the plaintiff; (2) publication by defendant of the statement to a third party; ( 3) fault on part of the defendant; and (4) injury to plaintiff or per se actionability. See Idema, 120 F. Supp. 2d at 365; Box Tree South, Ltd. v. Bitterman, 873 F. Supp. 833, 874 (S.D.N.Y. 1995).

*i. The Defamation and Libel Claims Against the City Defendants*

The City argues that it did not publish any defamatory statements about plaintiff, and thus cannot be held liable. Plaintiff argues that the City "caused" the Post to publish defamatory statements about him. However, plaintiff does not allege that the City Defendants published or made any of the alleged defamatory statements. Because plaintiff has failed to allege the publication element required for a defamation claim, the claim against the City Defendants is dismissed.

*ii. The Defamation and Libel Claims Against News Corp.*

a. "Thug" and "Gangsta" Are Statements of Opinion

News Corp. argues that the words "thug" and "gangsta" are non-actionable because they are statements of opinion. In the alternative, News Corp. contends that even if these words were assertions of fact, they would be truthful based on plaintiff's account of his criminal past. Plaintiff argues that these are "stereotypical racially charged 'code words'" that disparage African American men. (Opp. Br. at 6.) The Court finds that these words are expressions of opinion and thus cannot be defamatory.

New York law provides absolute protection for opinions in defamation cases. Flamm v. American Ass'n of Univ. Women, 201 F.3d 144, 147 (2d Cir. 2000). A defendant cannot be held liable for defamation for "simply expressing [an] opinion of another person, however unreasonable the opinion . . . may be." Hotcher v. Castillo-Puche, 551 F.2d 910, 913 (2d Cir. 1977). This is because a statement of opinion is not an assertion of fact that can be proved false. Biro v. Conde Nast, 883 F. Supp. 2d 441, 459–60 (S.D.N.Y. 2012). In determining whether a statement is one of fact or opinion, courts consider three factors:

> (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to

signal readers or listeners that what is being read or heard is likely to be opinion, not fact.

Qureshi v. St. Barnabas Hosp. Center, 430 F. Supp. 2d 279, 288 (S.D.N.Y. 2006) (quoting Gross v. New York Times Co., 623 N.E.2d 1163, 1167 (1993)).  "[A] statement of opinion that is accompanied by a recitation of the facts on which it is based" is not actionable.  Gross v, 623 N.E.2d at 1168.  Epithets or statements of "rhetorical hyperbole" are also not actionable because they cannot reasonably be interpreted as stating actual facts about an individual that can be proved false.  Flamm, 201 F.3d at 150–51 (quoting Milkovich v. Lorain Journal Co., 497 U.S. 1, 17 (1990)).

The Court finds that the words "thug" and "gangsta" are not capable of defamatory meaning because, in this context, they are statements of opinion and rhetorical hyperbole.  "Thug" and "gangsta" are accompanied by a recitation of facts in the articles about plaintiff's criminal history and involvement in gang activity, on which these statements of opinion are based.  The Court does not deny that these words often bear a distinctly negative, controversial, and racial connotation.  But "thug" and "gangsta" are colloquial epithets; they do not have precise meanings, state actual facts about plaintiff that can be proven true or false, or signal to readers that what is being read is a statement of fact.  See, e.g., Chau v. Lewis, 771 F.3d 118, 129 (2d Cir. 2014) (finding that "sucker," "fool," and "frontman" are hyperbolic epithets that are non-actionable statements of opinion); Buckley v. Littell, 539 F. 2d 882, 893–94 (2d Cir. 1976) (finding that words like "fascist" and "radical right" are imprecise and incapable of being proven true or false); Fortson v. Colangelo, 434 F. Supp. 2d 1369, 1380, 1385 (S.D. Fla. 2006) (finding that the terms "thug" and "gangsta" are protected statements of opinion and hyperbole).  Therefore, "thug" and "gangsta" are not actionable as defamatory statements.

b. <u>The Phrases "Thug Cop," "Gangsta cop," and "A retired cop's shocking life of drugs and crime" Do Not Support a Defamation Claim</u>

The complaint alleges that the Post article titles and "all related written and spoken content" were published to "'intentionally' signal and mislead the readers, listeners and viewers into 'falsely' believing [plaintiff] was involved in criminal acts while employed as a police officer." (<u>Compl.</u> ¶ 74.)  News Corp. argues that, viewing the article titles and text together, no reasonable reader could interpret the articles to suggest that plaintiff was involved in criminal activity prior to becoming a police officer.  The Court agrees with defendant.

At the motion to dismiss stage, the court must determine whether the alleged defamatory statement is reasonably susceptible of the defamatory meaning imputed to it.  <u>Jewell v. NYP Holdings, Inc.</u>, 23 F. Supp. 2d 348, 360 (S.D.N.Y. 1998).  "In analyzing the words in order to ascertain whether a question of fact exists for resolution upon trial, the court will not pick out and isolate particular phrases but will consider the publication as a whole."  <u>Id.</u> (quoting <u>James v. Gannett Co.</u>, 353 N.E.2d 834, 838 (1976)).  When the statement in question is the headline of an article, it must be defamatory in light of the article as a whole.  <u>Biro</u>, 883 F. Supp. 2d at 459–60.  A headline is only actionable if the court determines that the headline is not "a fair index of the article in which it appears."  <u>Triano v. Gannett Satellite Information Network, Inc.</u>, No. 09-CV-2497, 2010 WL 3932334, at *4 (S.D.N.Y. Sept. 29, 2010).

The Court finds that the statements at issue are not reasonably susceptible of implying that plaintiff was involved in criminal activity during his employment as an officer.[6]  Considering the headlines and the text of the articles together in context, the articles make clear that plaintiff's

---

[6] Additionally, the Court notes that plaintiff does not address this argument in his opposition brief.  Plaintiff merely mentions that News Corp. used unfavorable images of him, which combined with the words "thug" and "gangsta," have harmed his reputation and imply that he is "nothing other than a 'Thug Cop.'"  (Opp. Br. at 6.)

criminal activity occurred prior to his employment as an officer.  For example, the first paragraph

of the September 8 article that appeared with the headline "THUG COP" and the title, "A retired

cop's shocking life of drugs and crime" states: "Before joining the NYPD, [Pegues] peddled crack,

tried to murder a fellow drug dealer and was close pals with a notorious cop killer." (Balin Decl.,

Ex. B, at 2.)  In context on the entire article, the phrase "life of drugs and crime" does not indicate

that the subject was involved with drugs and crime for his entire life or during his career in the

NYPD.  Because the articles discuss plaintiff's self-revealed criminal activity as a youth, the

headlines are fair indexes of the articles.  Therefore, the statements are not actionable.

c.  <u>The Statement Regarding Plaintiff's Pension Is Not Actionable</u>

Plaintiff's complaint alleges that News Corp. "falsely and maliciously" reported that he

"scored" his pension by falling off of a chair.  (<u>Compl.</u> ¶ 61.)  He also alleges that News Corp.

"'intentionally' and 'maliciously' fabricated the basis for the receipt of his Accidental Disability

Retirement Pension designed to signal and mislead the readers, listeners and viewers into 'falsely'

believing he was not entitled to accidental disability retirement pension benefits supporting the

racial stereotyping of African-American Males."  (Id. ¶ 78.)  News Corp. argues that, even

assuming the statement that plaintiff "scored" his pension by falling off a chair is false, it is not

capable of defamatory meaning.  Plaintiff fails to address News Corp.'s arguments that the

statements regarding plaintiff's pension do not rise to the level of defamation in his opposition

brief, only generally asserting that "an objective review of the communications as a whole can be

reasonably read to both impart a defamatory inference and to affirmatively suggest . . . [News

Corp.] intended or endorsed that inference."  (Opp. Br. at 9.)  For the reasons set forth below, the

statements regarding plaintiff's pension are not actionable as defamation per se or defamation by

implication.

The Court finds that an article falsely claiming someone scored a pension by falling out of a chair is not actionable as defamation per se.  While on its face the statement may suggest to the average reader that plaintiff is clumsy, uncoordinated, or injury-prone, this statement is "not the type that would tend to ruin a man's reputation."  Dworin v. Deutsch, No. 06-CV-13265, 2008 WL 508019 at *7 (S.D.N.Y. Feb. 22, 2008).

Plaintiff's opposition brief does not directly address how the statements regarding his pension rise to the level of defamation.  However, the complaint intimates that scoring a pension by falling out of a chair suggests that plaintiff was not entitled to the accidental disability retirement pension benefits that he was receiving.  To conclude that the statement implies that plaintiff purposefully fell out of the chair or concocted a story about falling out of the chair to obtain an accidental disability retirement pension would require a strained reading, especially when the article lacks any suggestion of deceit by the plaintiff.  This is particularly true in the context of the entire article, which rather than suggesting that plaintiff might lose his pension because he was not entitled to it or lied about the circumstances under which he sustained an injury, reported that his pension could be revoked for lying on his employment application regarding his past criminal history.  (See Balin Decl., Ex. C. ("Authorities could seek to revoke Pegues' pension if he somehow lied on his NYPD employment application.").)  For the reasons stated above, the claim does not rise to the level of contempt or derision to injure someone's reputation in the workplace, and thus, is not reasonably susceptible of a defamatory meaning per se.

If a false statement does not constitute defamation per se, a plaintiff may still sustain a claim if the statement constitutes defamation by implication.  Defamation by implication is premised on false suggestions or implications that arise from otherwise truthful statements.  Biro, 883 F. Supp. 2d at 464.  The court typically requires an "'especially rigorous showing' that the (1)

language may be reasonably read to impart the false innuendo, and (2) the author intends or endorses the inference." Id. at 466 (quoting Chapin v. Knight-Ridder, Inc., 993 F.2d 1087, 1093 (4th Cir. 1993)).

The statement is also not actionable as defamation by implication. First, while defamation by implication is premised on false suggestions arising from otherwise truthful statements, plaintiff contends that the statement that he fell out of a chair is false. See Kramer v. Skyhorse Pub. Inc., 989 N.Y.S.2d 826, 835 (N.Y. Sup. Ct. 2014) (finding that plaintiff did not advance a claim of defamation by implication when plaintiff alleged that defendant's statements were false). Moreover, plaintiff offers nothing more than conclusory statements that News Corp. "falsely" and "maliciously" published misleading statements, which is not sufficient to make the "rigorous showing" of intent required for defamation by implication. See Ello v. Singh, 531 F. Supp. 2d 552, 580 (S.D.N.Y. 2007) (merely making the conclusory statement that defendant willfully and maliciously intended to impugn plaintiff is not sufficient to defeat a Rule 12(b)(6) motion).

### III.    CONCLUSION

For the reasons set forth above, defendants' motions to dismiss are granted as to all claims against the City Defendants and News Corp., and the case is dismissed against the City Defendants and News Corp. for failure to state a claim.


**SO ORDERED.**

Date: September 16, 2016
Central Islip, New York


                                        _____/s/ (JMA)_____
                                        Joan M. Azrack
                                        United States District Judge